### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### BIRMINGHAM DIVISION

Lauren Foster,

    Plaintiff,

v.

Eastpoint Recovery Group, Inc.,
and
Diverse Funding Associates, LLC

    Defendants

Civil Action File No.:

**COMPLAINT WITH**
**JURY TRIAL DEMAND**

### PRELIMINARY STATEMENT

This action for damages is based upon the Defendant's overt and intentional, unlawful conduct in the furtherance of its efforts to collect a consumer debt. The Defendant's conduct is in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.

### PARTIES

1. Plaintiff, Lauren Foster, is a natural person who resides in Shelby County, Alabama.

2. Defendant, Eastpoint Recovery, Inc., (hereinafter "Eastpoint") is a New York corporation.  It is not authorized to do business in Alabama nor does it

maintain a registered agent within the state. Defendant may be served with process via its chief executive officer, Danielle Green, 1738 Elmwood Avenue, Suite 104, Buffalo, New York 14207.

3. Diverse Funding Associates, LLC (hereinafter "DFA") is a limited liability corporation organized under the laws of the State of New York and maintains a registered agent for service in Alabama. To wit, Cogency Global, Inc., 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendants because, inter alia, Defendants frequently and routinely conducts business in the State of Alabama, including the conduct complained of herein.

6. Pursuant to 28 U.S.C. § 1391, venue is proper in the Northern District of Alabama because a substantial part of the events or omissions giving rise to the claims occurred in this district.

7. Venue is proper in the Birmingham Division because the conduct complained of herein occurred in Shelby County, which is in the Northern District of Alabama.

## FACTUAL ALLEGATIONS

8. Plaintiff is allegedly obligated to pay a consumer debt arising out of a "Paypal" account underwritten by Synchrony Bank. This account was used for the purchase of consumer goods and the Plaintiff is therefore, a "consumer", as that term is defined by 15 U.S.C. § 1692a(3).

9. DFA is a national purchaser of defaulted consumer debt. Per its company website, it is "a company with more than seventy-five years of combined experience in the realm of debt purchasing and collections, . . . specializing in consumer asset classes. We have experience in credit cards, DDA accounts, consumer loans, medical accounts and a variety of non-performing commercial loan instruments." www.DiverseFundingLLC.com. (Last visited 02/01/2021.)

10. DFA's principal business is the purchase of consumer debt and the collection of those accounts for its commercial benefit. Defendant regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to a third party.

11. DFA uses interstate commerce and/or mail in its business in the collection of consumer debts.

12. DFA manages, and collects upon, thousands of consumer debt accounts annually.

13. DFA is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

14. Eastpoint is a collection agency specializing in the collection of consumer debt.

15. Eastpoint uses interstate commerce and/or mail in its business in the collection of consumer debts.

16. Eastpoint manages, and collects upon, thousands of consumer debt accounts annually.

17. Eastpoint is, therefore, a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

18. DFA contracted with Eastpoint to collect a debt owed by the Plaintiff. The Defendants have worked together to collect hundreds of defaulted consumer accounts over the years.

19. For all purposes and at all times relevant to this action, Eastpoint has been the agent of DFA and all actions taken by Eastpoint have been at the direction and per the authority of DFA.

20. The Plaintiff has fallen behind on a significant number of consumer debts over the last few years.

21. For the last several months, the Plaintiff has been receiving collection calls and letters from a number of parties, including Eastpoint.

22. In early August 2020 the Plaintiff received a voicemail message from an individual identifying themselves as an agent of Eastpoint. The message indicated that Eastpoint was collecting an account originating with Synchrony Bank and that the Plaintiff had until August 3rd to contact them to resolve the matter. The Plaintiff returned Eastpoint's voicemail and entered into a payment arrangement related to the accounts in collection. At that time the Plaintiff had a number of questions regarding the nature of the debt, but was frightened and intimidated by Eastpoint's statement in the voicemail that she had a very limited time to resolve this matter.

23. On August 5th, 2020 Plaintiff received a second voicemail from an individual identifying herself as Kate Hall. That message reiterated the fact that the Plaintiff had only until August 3rd to respond to Ms. Hall at a number she

provided and that it was now Wednesday, August 5th.  Ms. Hall indicated that she would have to deem the account and the Plaintiff as failing to cooperate unless she could speak with the Plaintiff or her "proper counsel". Ms. Hall concluded the message by indicating that she was able to obtain an extension from her client to the next few days to give the Plaintiff time to "respond voluntarily."  At that juncture Ms. Hall left her telephone number and terminated the message.

24. At no time during the course of the voicemail does Ms. Hall identify her employer or the debt she is seeking to collect.

25. The Plaintiff assumed Ms. Hall was acting as a collection agent but, given the state of her finances and the fact that she had entered into a payment agreement with Eastpoint the day before, she was very confused and did not know for whom Ms. Hall was calling. What was clear to Ms. Foster from the message was that in a very few days some action was going to be taken against her.

26. After speaking with a representative of the Defendant Eastpoint and arranging a repayment plan, the Plaintiff received a collection letter from Eastpoint dated August 4th 2020 that contained the following disclosure:

"Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid.  If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment for verification.  If you request this office in writing within

30 days after receiving this notice, this notice will provide you with the name and address of the original creditor, if different from the current creditor."

A reproduction of this letter is filed herewith as Exhibit 1.

27. Eastpoint's letter of August 4th raised a host of issues in the mind of the Plaintiff because she did indeed desire to dispute the debt. On August 12th, 2020 the Plaintiff initiated a phone call to the Defendant, at which time she informed Defendant's agent that she wanted to go over her account again. The Plaintiff specifically said that she needed to know a few things because she had received a letter over the weekend from Eastpoint that was dated August 4th. Eastpoint suggested that the letter of August 4th was meaningless as the Plaintiff now had a contract for repayment between her and Defendant Diverse.

28. The Plaintiff expressed confusion and pointed out that the voicemail she had received from a Ms. Hall said she only had until August 3rd to respond. Defendant responded that was correct. Plaintiff went on and stated but that the letter from the 4th stated something quite different. The Defendant responded that that meant nothing. Defendant stated that Plaintiff has 30 days to contact Eastpoint if there is a dispute, but that does not mean that she has 30 days from the letter of August 4th.

29. The Plaintiff tried to argue this, directing Eastpoint's agent to the plain language of the August 4th letter. The Defendant repeated "you don't have 30 days, you don't, you don't."

30. Shortly after this conversation with the Defendant, the Plaintiff contacted her bank and stopped all payments that were scheduled to be debited from her account by the Defendant.

31. On August 20, 2020 the Plaintiff received an email from Christy Lynn at Eastpoint which requested that the Plaintiff contact either Kate Hall or Ms. Lynn herself with regard to the stop payment that it had received from the Plaintiff's bank.

32. The Plaintiff responded with an email on August 21st, 2020 which read, "I received your email, under the circumstances I must say I will not be making any payments on this account. Thank you, Lauren A. Foster."

33. Notwithstanding the Plaintiff's clear statement to Defendants that she would not be making payments on this account, Eastpoint continued to contact her seeking payment. Specifically, Eastpoint telephoned the Plaintiff on August 31st, 2020 at 9:48 a.m.

34. The Fair Debt Collection Practices Act provides an indisputable means by which a consumer may discontinue most communications from a collector, thereby preserving their peace. 15 U.S.C. § 1692c.

35. The act states specifically, "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt, or if the consumer wishes the debt collector to cease their communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt. 15 U.S.C. § 1692c(c). The statute further provides three exceptions related to future communications that include the debt collector advising the consumer that further efforts are being terminated, that the collector may invoke specified remedies which are ordinarily invoked by such a debt collector, or that the debt collector intends to invoke a specified remedy.

36. The Defendants' call to the Plaintiff of August 31st did not meet any of the exceptions of 15 U.S.C. § 1692c(c).

## INJURIES-IN-FACT

37. The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.*, No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); *Church v. Accretive Health,*

*Inc.*, 654 Fed. Appx. 990, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

38. An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).

39. Violation of statutory rights are not a "hypothetical or uncertain" injury, but one "that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *McCamis*, at 4, citing *Church*, at 3.

40. Defendant is subjecting Plaintiff to false, deceptive, unfair, and unconscionable means to collect the debt.

41. Defendants acts and omissions caused particularized harm to the Plaintiff in that the false and misleading information provided by Defendant hindered the Plaintiff from disputing the debt as she wished; making the necessary decisions regarding the prioritization of her payments to resolve her debt; and the inability to cease receiving communication from the Defendants thus preserving her peace.

42. Accordingly, through the violation of Plaintiffs' statutorily created rights under the FDCPA, Plaintiffs have suffered an injury-in-fact sufficient to establish Article III standing.

## DAMAGES

43. As a result of the Defendant's actions and/or omissions, Plaintiff has suffered actual damages, including but not limited to the following:

a.) Being subjected to false, deceptive, unfair, and unconscionable debt collection practices;

b.) Confusion related to her ability to dispute a debt based upon false representations of the Defendants

c.) Confusion related to the Defendant's identity and communication through a vague and unlawful voicemail message;

d.) Uncompensated time expended away from work and/or activities of daily living, to confer with counsel regarding the Defendant's collection efforts;

e.) Disturbance of the Plaintiff's peace and her right to be free of communications from the Defendant; and

f.) Anxiety and worry caused by concern that Defendant was going to continue making collection calls to the Plaintiff at times that were inconvenient for the Plaintiff.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et. seq.

*Violations of 15 U.S.C. § 1692c and subparts*

44. The Defendant's attempted call on August 31st, 2020 was a violation of 15 U.S.C. § 1692c(c).

*Violations of 15 U.S.C. § 1692e and its subparts*

45. 15 U.S.C. §•1692e specifically prohibits the use of any false, deceptive, or misleading representations or means in connection with the collection of any debt.

46. The use of "or" in § 1692e means a representation violates the FDCPA if it is false or deceptive or misleading. *Bourff v. Rubin Lublin*, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012).

47. The standard in determining the nature of any such representation is that of the "least sophisticated consumer." Its purpose is to protect "naive consumers" with a minimal understanding of personal finance and debt collection. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam).

48. Moreover, the least sophisticated consumer is not to be held to the same standard as a reasonably prudent consumer. The least sophisticated consumer, though not unreasonable, is "ignorant" and "unthinking," "gullible," and of "below-average sophistication or intelligence," *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 16-17107, 2019 U.S. App. LEXIS 33662, at 12-13 (11th Cir. Nov. 12, 2019), quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)

49. A false representation in connection with the collection of a debt is sufficient to violate the FDCPA, even if it is not alleged or proven to be misleading or deceptive.

50. Defendants' vague threats limiting the Plaintiff to action on or before August 3rd, 2020 created the false impression in the Plaintiff that she was subject to imminent harm or more stringent collection activity. The Defendant's representations and implications were objectively false and materially misleading and a violation of 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10).

51. The Defendants' representations in the telephone conversation with the Plaintiff of August 12th to the effect that she did not have 30 days from her receipt of the letter dated August 4th to dispute the debt or to seek validation of the debt was objectively false in that that right was specifically granted to her by the Defendant, if not the statute, by its language within that letter. The Defendant's

representations and implications were objectively false and materially misleading and a violation of 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10).

52. The Defendants' failure to identify itself or advise the Plaintiff that it was acting as debt collector in the voice message left for Plaintiff on August 5th was a violation of 15 U.S.C. §§ 1692e, and 1692e(11).

***Violations of 15 U.S.C. § 1692f and its subparts***

53. The conduct of the Defendant as described herein was unfair and unconscionable. It preyed upon perceived fear and lack of sophistication of the Plaintiff.

54. Defendant's conduct violated 15 U.S.C. § 1692f.

## TRIAL BY JURY

55. Plaintiff is entitled to and hereby requests a trial by jury.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a.) Plaintiff's actual damages;

b.) Statutory damages pursuant to 15 U.S.C. § 1692k;

c.) Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k; and

d.) Such other and further relief as may be just and proper.

Respectfully submitted this 19th day of February, 2021.

        **BERRY & ASSOCIATES**

        */s/ Matthew J. Landreau*
        Mathew Landreau
        Alabama Bar No.:4710-A22L
        *Mlandreau@mattberry.com*
        2751 Buford Highway, Suite 600
        Atlanta, GA 30324
        Ph. (404) 235-3300
        Fax (404) 235-3333

        *Plaintiff's Attorney*